UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA JUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 11 C 1856 |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Pursuant to 42 U.S.C. § 405(g), Plaintiff Theresa Just ("Just") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382c. Just and the Commissioner filed cross-motions for summary judgment.[1]  For the reasons set forth below, Just's motion is granted and the Commissioner's motion is denied.

---

[1] Although denominated as motions for summary judgment, these motions are actually a review of the administrative record. *See Schmidt v. Astrue*, 496 F.3d 833 (7th Cir. 2007); *Allen v. Callahan*, No. 97 C 1080, 1997 WL 665752 (N.D. Ill. Oct. 17, 1997) (Kocoras, J.).

# BACKGROUND

## I. Procedural History

Just filed an application for SSI and DIB on March 16, 2007, alleging disability as of January 18, 2007, due to various mental and physical impairments. Just's application was initially denied on July 10, 2007 and again upon reconsideration on November 29, 2007. Just requested a hearing, which was conducted before an Administrative Law Judge ("ALJ") on July 30, 2009. On September 11, 2009, the ALJ rendered a finding of "not disabled." Having exhausted her administrative remedies, Just filed the instant action.

## II. Medical Evidence

### A. Physical Impairments

Since November 2006, Just has been treated for dysmenorrhea, which presents with symptoms of acute pelvic and abdominal pain. Just's treating physician, Dr. M.T.K. Ghani ("Dr. Ghani"), examined Just on multiple occasions between 2006 and 2007 but reported no abnormal gynecological findings. Dr. Ghani prescribed pain medication for Just's abdominal pain and recommended a partial hysterectomy, noting that Just was unable to work until further notice. Dr. Ghani also diagnosed Just with depression, prescribed Avonex, and recommended her for psychiatric counseling.

Dr. Sun Kim ("Dr. Kim") treated Just from May 2007 through March 2008 and diagnosed Just with severe pelvic endometriosis, stage III. Endometriosis often presents

with symptoms of dysmenorrhea and pelvic pain. Dr. Kim treated Just with Lupron injections for a period of six months.

In addition to endometriosis and dysmenorrhea, Just suffers from recurrent skin infections. These infections frequently develop into abscesses and require surgical lancing, draining, and intravenous antibiotics. A culture exam revealed that the infections contained methicillin resistant staphylococcus aureas ("MRSA"), a highly contagious bacteria that is resistant to many antibiotics.

B.   **Mental Impairments**

In June 2007, Just saw J.B. Goebel, Ph.D. ("Dr. Goebel") for a consultative psychological evaluation. Just complained of depression and difficulty sleeping. Dr. Goebel conducted a mental status exam to assess various aspects of Just's cognitive abilities. During the mental status exam, Just made several errors consistent with concentration difficulties.[2] However, Dr. Goebel determined that she was of average intelligence and diagnosed her with major depressive disorder.

On July 3, 2007, Dr. Glen Pittman ("Dr. Pittman") reviewed the record and opined that Just did not have a severe mental impairment. He stated that Just had mild difficulties in daily activities, social functioning, and concentration, persistence, or pace. Though he noted that Just had some problems with calculations and memory,

---

[2] For example, Just made an error in subtracting serial sevens, could not remember any objects after a five-minute delay, and stated that there were 247 weeks in a year.

Dr. Pittman determined that Just's depression was not severe and did not significantly impair her activities of daily living.

At Dr. Kim's request, Just met with Dr. Samina Khattak ("Dr. Khattak"), a psychiatrist, in July 2007. Just complained of mood swings, aggressive outbursts, depression, and difficulty sleeping. Dr. Khattak diagnosed Just with bipolar disorder and prescribed Lamictal and Abilify. When Just complained of adverse side effects of these medications, Dr. Khattak switched her medication to Lithium.

At Dr. Khattak's behest, Just met with a counselor, Roy Gilliland, Ph.D. ("Dr. Gilliland") for five months in 2007. On October 10, 2007, Dr. Gilliland conducted a consultative examination and reported that Just's mood was anxious and depressed. Analytical intelligence testing revealed that Just was in the low-average to borderline range of intellectual functioning and was suffering from moderate depression. Dr. Gilliland confirmed Dr. Khattak's diagnosis of bipolar disorder and further diagnosed Just with post-traumatic stress disorder. In treatment notes from November 2007, Dr. Gilliland observed that medication effectively controlled Just's severe mood swings. Between November and December 2007, Just failed to appear at several scheduled appointments with Dr. Gilliland.

In October 2008, Dr. Khattak responded to a questionnaire and stated that Just maintained poor or no ability to perform a range of tasks necessary for unskilled work. Dr. Khattak opined that Just had moderate difficulties in social functioning, constant

deficiencies in concentration, persistence, or pace, and continued episodes of decompensation. State agency psychologist R. Leon Jackson, Ph.D. reviewed the record, including Dr. Khattak's report, and concluded that Just's ability to perform her daily activities did not appear to be worsening.

## III. The Administrative Hearing

On October 20, 2008, the ALJ conducted a hearing, during which she received testimony from Just, Just's roommate, and a vocational expert ("VE"). Just testified that the pain arising from her dysmenorrhea and skin infections precluded her from working. Just's roommate testified that Just's skin infections and dysmenorrhea were severely incapacitating. The VE testified, in response to a hypothetical question posed by the ALJ, that someone with Just's impairments could perform a considerable number of jobs in the regional economy. Based on the record evidence and hearing testimony, the ALJ concluded that Just was not disabled within the meaning of the Social Security Act.

## LEGAL STANDARD

## I. Statutory and Regulatory Framework

Under the Social Security Act, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). The Social Security Administration ("SSA") evaluates disability claims under a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the SSA in 20 C.F.R. pt. 404, subpt. P, app. 1 ("Appendix 1"); (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy. 20 C.F.R. § 404.1520(a)(4)(I-v). An affirmative answer at step three or step five requires a finding of disability, while a negative answer at any step other than step three precludes such a finding. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

**II. Standard of Review**

A district court reviewing an ALJ's decision must affirm the decision if it is supported by substantial evidence and does not contain legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such evidence as a reasonable mind might accept to adequately support a conclusion." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). A court will not "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d

836, 841 (7th Cir. 2007) (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). However, an ALJ is not entitled to unbridled judicial deference. *Clifford*, 227 F.3d at 869. A court will reverse or remand if the ALJ fails to rationally articulate the grounds for her decision or fails to build a logical bridge from the evidence to her conclusions. *Steele*, 290 F.3d at 941.

## DISCUSSION

Just contends that her claims should be remanded to the SSA because the ALJ committed three errors in determining Just's residual functioning capacity ("RFC"), defined as "the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 416.945(a). First, Just asserts that the ALJ committed an erroneous credibility finding against her. Second, Just contends that the ALJ erroneously rejected the conclusions of her treating physicians, Dr. Khattak and Dr. Ghani. Finally, Just argues that the ALJ's RFC determination as a whole lacks a supporting medical basis.

### I. The ALJ's Credibility Finding

Just challenges the ALJ's credibility finding in her RFC determination. Courts grant special deference to the credibility findings of an ALJ and will only overturn such findings if they are "patently wrong." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). In determining if a credibility determination is "patently wrong," a court considers whether an ALJ's reasons for discrediting the testimony are unreasonable or

unsupported. *Id.* An ALJ must support his credibility determination by building a "logical bridge" between the medical evidence and his ultimate credibility determination. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) (internal quotation omitted). Furthermore, the ALJ's decision must be "sufficiently specific to make clear . . . the weight the [ALJ] gave to the individual's statements and the reasons for that weight. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir. 2003) (quoting SSR 96-7p, 1996 WL 374186 (July 2, 1996)). The ALJ discussed Just's credibility with respect to her mental impairments, endometriosis, and MRSA outbreaks. We examine each of these credibility assessments in turn.

Just testified that her mental impairments precluded her from working closely with others. The ALJ determined that Just's testimony was not fully credible because Just failed to appear for several appointments with Dr. Gilliland, and Dr. Gilliland commented that her mood swings appeared to be under control with medication. These reasons are sufficient to support the ALJ's determination that Just was only partially credible, and the credibility determination is not patently wrong. In any event, the ALJ accommodated Just's inability to work closely with others by limiting her to jobs that require only minimal contact with other people. Therefore, the ALJ's credibility determination regarding the severity of Just's mental impairments will not be disturbed.

The ALJ also made an adverse credibility finding regarding Just's abdominal pain. Just testified that her endometriosis and associated dysmenorrhea caused her intense pain that lasted for approximately eleven days each month. During this time, Just stated that she would often go to the emergency room for treatment. When the monthly hospital visits became too expensive, she dealt with her pain at home in various ways, including curling up in a ball, laying down, or laying in the bathtub. In support of his adverse credibility finding, the ALJ noted that Just was prescribed pain medication to treat her pelvic pain. Just testified that the pain medication was ineffective, and the ALJ failed to provide any basis upon which to discredit Just's testimony. Moreover, the ALJ's characterization of Just's dysmenorrhea as "pretty yucky periods" that are "not an unusual occurrence" indicates that he may not have appreciated the difference between Just's endometriosis-related dysmenorrhea and "ordinary" menstrual cramps. As the ALJ failed to support his credibility determination regarding the severity of Just's chronic abdominal pain, the case must be remanded for reconsideration.

Upon remand, the ALJ should also reassess his credibility determination with respect to Just's MRSA-related symptoms. Just testified that she develops recurring MRSA-infected boils on her skin on a monthly basis that severely limit her ability to perform daily activities. The ALJ did not find Just's testimony credible, and he

supported this adverse credibility finding by referencing a treatment note from 2004 that indicates Just's skin infections improved with antibiotic treatment, and a treatment note from 2007 in which a doctor questioned whether MRSA was the cause of Just's skin infections. However, an ALJ may not reject a claimant's statements about the "intensity and persistence of [her] pain or other symptoms . . . solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Rather, an ALJ must also consider: (1) the claimant's daily activity, (2) the duration, frequency, and intensity of her symptoms, (3) precipitating and aggravating factors, (4) the dosage, effectiveness, and side effects of any medication, and (5) functional restrictions. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). In discrediting Just's testimony, the ALJ failed to consider evidence beyond the objective medical evidence, particularly the limitations in Just's daily activity. The ALJ's reliance on medical evidence alone is insufficient to sustain his adverse credibility finding. Moreover, the medical evidence merely suggests that Just's skin infections are treatable once they have developed and does not speak to the duration, severity, or persistence of the accompanying symptoms until the treatment is complete. Additionally, the ALJ's reference to the doctor who questioned whether MRSA or some other bacteria caused Just's skin infections is irrelevant to determining whether Just's subjective allegations of pain are credible.

As a final matter, although the ALJ failed to sufficiently support his credibility determinations, he did not err in failing to discuss the testimony of Just's roommate. Although witness testimony may be helpful in determining the extent of a claimant's impairments, an ALJ need not discuss such testimony if the testimony is essentially redundant or corroborative. *Brooks v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996). Just's roommate testified that Just's skin infections develop into boils several times each month all over her body. He further testified that he routinely bandages Just's skin infections and that "there's no way someone could go to work like that." This testimony merely corroborates Just's testimony as to the severity of her symptoms, and the ALJ recognized that Just developed monthly skin infections that required extensive antibiotic treatment. Therefore, the ALJ did not err in failing to discuss Just's roommate's testimony in his decision.

In sum, the ALJ made an erroneous credibility finding against Just by failing to build a logical bridge between his ultimate conclusion and the record evidence. This is not to say that the ALJ's ultimate credibility finding was incorrect. Rather, we find only that the basis for his credibility determination as expressed in his decision is legally flawed and unsupported by substantial evidence. Upon remand, the ALJ should re-evaluate Just's credibility and base his credibility determination on substantial

evidence from the record as a whole rather than relying on objective medical evidence alone.

## II. The ALJ's Rejection of Just's Treating Physicians' Conclusions

Just next argues that the ALJ erroneously rejected the conclusions of her treating physicians, Dr. Ghani and Dr. Khattak, in determining the severity of her impairments. A treating physician's opinion about the nature and severity of a claimant's impairment is given controlling weight as long as it is well supported and consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). If an ALJ declines to afford a treating physician's opinion controlling weight, he must discuss the reasons for his decision and consider: "(1) the length, nature, and extent of the treatment relationship, (2) the frequency of examination, (3) the physician's specialty, (4) the types of tests performed, and (5) the consistency and supportability of the physician's opinion." *Moss*, 555 F.3d at 560 (citing 20 C.F.R. § 404.1527(d)(2)).

Dr. Ghani submitted a letter confirming that Just suffered from dysmenorrhea, was awaiting a hysterectomy, and was unable to work pending further notice. The ALJ gave "no weight" to Dr. Ghani's opinion that Just was unable to work, stating that it was unsupported by the record and was "transitional," pending Just's hysterectomy. As the ALJ correctly observed in his decision, he was not required to accept Dr. Ghani's

conclusion that Just was unable to work because the issue of whether a claimant is unable to work is reserved for the Commissioner, and a physician's opinion on this issue is not entitled to any special significance. 20 C.F.R. §§ 404.1527(e), 416.927(e); *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010) (internal citations omitted). The remainder of the letter merely confirmed what the ALJ had already accepted as true– that Just suffered from dysmenorrhea and was awaiting surgery. Therefore, the ALJ did not err by declining to give Dr. Ghani's opinion controlling weight.

The ALJ also declined to give substantial weight to Dr. Khattak's opinion of the severity of Just's mental impairments. Dr. Khattak determined that Just's mental impairments adversely affected her concentration and left her with poor or no ability to perform many tasks required of skilled or unskilled work, including working in proximity to others, maintaining regular attendance, and performing at a consistent pace. The ALJ declined to give Dr. Khattak's opinion controlling weight because he believed Just's daily activities and Dr. Goebel's findings directly contradicted Dr. Khattak's conclusions.

In supporting his decision to give little weight to Dr. Khattak's opinion, the ALJ mischaracterized the record evidence concerning both Just's ability to perform daily activities and Dr. Goebel's findings. Regarding Just's daily activities, the ALJ stated that Just reported an ability to play cards with others, go to church, talk on the phone

with friends and family, and travel up to forty minutes to visit her mother. However, Just reported that she sometimes plays cards with her roommates but "not often," that she rarely attended church but prayed at home, and she talked to her mother on the phone but rarely visited her. In referencing Dr. Goebel's report, the ALJ stated that Just's memory skills were average, she was able to complete the concentration subtest of her mental status exam with little difficulty, and she denied a history of psychiatric treatment. However, Dr. Goebel found that Just was unable to remember any of three objects after a five minute delay, could not remember what had been in the news lately, could not recall the name of her elementary schools, and made errors in the concentration subtest of her mental status exam. Dr. Goebel also noted that Dr. Ghani had diagnosed Just with depression for which she was taking medication. Furthermore, additional medical evidence indicates that Just had been prescribed various medications to treat her bipolar disorder. Although an ALJ need not review every piece of evidence in the record, he may not "cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)). Here, the ALJ mischaracterized and selectively cited evidence to support his finding of non-disabled. In doing so, he erroneously disregarded Dr. Khattak's opinion.

**III.    The ALJ's RFC Determination**

Finally, Just contends that the ALJ's ultimate RFC determination is not supported by substantial evidence. Because the ALJ erred in his evaluation of Just's credibility and the weight given to Dr. Khattak's opinion, his RFC analysis necessarily lacks a proper evidentiary basis. Upon remand, the ALJ must consider the combined effect of all of Just's impairments, including her dysmenorrhea and recurrent skin infections, to the extent they are credible and consistent with the record evidence.

**CONCLUSION**

Based on the foregoing, the Court grants Just's motion for summary judgment, denies the Commissioner's motion for summary judgment, and remands Just's claim to the SSA for reconsideration.

_____
Charles P. Kocoras
United States District Judge

Dated:  February 1, 2012